IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICKY WHEELER, personally and as
Special Administrator of the
Estate of Gretchen A. Konrad, Deceased,
and as the father and natural guardian
of L.W., a minor,

                            Plaintiff,

v.                                                Case No. 17-2249-JTM

UNITED STATES OF AMERICA,

                            Defendant.

## ORDER

Ricky Wheeler, the surviving spouse of Gretchen A. Konrad, brings this wrongful-death and survival action against the United States of America under the Federal Tort Claims Act. Plaintiff alleges physicians and other healthcare providers at Irwin Army Community Hospital ("IACH") negligently failed to properly manage Ms. Konrad's delivery of her son and failed to properly assess and treat Ms. Konrad thereafter. Plaintiff has filed a motion to compel defendant to provide complete responses to his first interrogatories and request for production of documents (ECF No. 35). For the reasons set forth below, the motion is granted in part, denied in part, and taken under advisement in part.

      **1. Training policies and procedures, and credentialing and privileging requirements (Interrogatory Nos. 7–10; Document Request Nos. 4, 8, 10, and 16)**

Plaintiff seeks production of materials used to train agents, servants, employees

1

and/or contractors of IACH, IACH policies and procedures, and the requirements for credentialing and privileging IACH physicians and staff. In response to plaintiff's motion to compel, defendant asserts its supplemental document production and amended interrogatory answers have resolved these requests. Plaintiff, in his reply brief, seeks clarification only as to Interrogatory No. 7. Specifically, plaintiff claims that defendant's amended answers to Interrogatory Nos. 8–10 state that defendant has searched for responsive information and has not found anything beyond what has been produced. Defendant's response to Interrogatory No. 7, which covers training on the management of uterine atony, apparently lacks a similar statement.[1] Accordingly, "[o]ut of an abundance of caution," plaintiff requests that defendant either describe in full all training concerning the management of uterine atony or state that no further records exist.[2] Plaintiff's motion to compel is granted as to Interrogatory No. 7, and denied as moot with respect to Interrogatory Nos. 8–10 and Document Request Nos. 4, 8, 10, and 16.

### 2. Audit log and/or audit trails (Document Request Nos. 5–7)

Plaintiff seeks the audit log and/or audit trail for the electronic health record of Ms. Konrad and her son. Plaintiff claims defendant's responses to these requests are insufficient in two respects. First, plaintiff claims the audit trail information produced by defendant only includes "view information when the person accessing the record also

---

[1] Defendant's amended interrogatory answers have not been attached as exhibits to either party's briefing.

[2] ECF No. 45 at 2.

modifies or takes some other action in the record."[3] Plaintiff, however, seeks "'view information' even when the person did not modify or take any action in the record."[4] Second, plaintiff suggests defendant's responses do not provide audit trail information for all software systems on which Ms. Konrad's medical records were managed, which include Ahlta, Essentris, and Innovian.

In response to plaintiff's motion to compel, defendant asserts it's produced data regarding the audit log or audit trail of Essentris, the inpatient medical record system used at IACH. Defendant asserts "[n]o responsive data exists for AHLTA (outpatient) or CHCS (labs) records," and that defendant "is attempting to obtain audit data from the contractor who runs the [Innovian] software" used by the anesthesia department at IACH.[5] Plaintiff's motion is granted with respect to Document Request Nos. 5–7 insofar as plaintiff seeks audit data for the Innovian software and the "view only" audit trail information for Essentris.

### 3. Code Blue (Document Request Nos. 1–2 and 18–20)

Plaintiff seeks all documents pertaining to Ms. Konrad's code blue on April 30, 2015. Plaintiff claims that defendant has produced some responsive documents, but that a number of responsive documents remain outstanding, including lab results, EKG documentation, heart rhythm recordings, defibrillator data, forms referenced in FR

---

[3] ECF No. 35 at 9.

[4] *Id.*

[5] ECF No. 42 at 3.

3

MEDDAC Regulation No. 40-117, a note written by Sean Pozarek, CRNA, and a memorandum written by Mary Ellen Raymond, CNM.

The parties agree defendant's amended discovery responses have resolved plaintiff's requests for the code blue documentation, except to the extent defendant has withheld the Pozarek note and Raymond memorandum pursuant to the medical quality assurance privilege contained in 10 U.S.C. § 1102. Accordingly, plaintiff's motion to compel is denied as moot, in part, as to Document Request Nos. 1–2 and 18–20. Defendant's privilege assertions are addressed below.

### 4. Interdepartmental communications (Document Request Nos. 1 and 18–20)

Plaintiff seeks interdepartmental communications between physicians and staff regarding Ms. Konrad and her son.[6] In response to plaintiff's motion to compel, defendant asserted it was working to identify responsive communications, and expected to finish this process no later than March 23, 2018. Accordingly, to the extent not already moot, plaintiff's motion to compel is granted as to Document Request Nos. 1 and 18–20.

### 5. Miscellaneous information not yet produced, subject to no objection

Plaintiff claims defendant has indicated it will produce documents and information responsive to Interrogatory Nos. 1, 4, and 11, and Document Request Nos. 4, 7–10, 16, 25, and 37, without objection, but that plaintiff has not yet received documents or information in response to these requests. In response to plaintiff's motion to compel,

---

[6] The court notes that Request No. 1 has been rewritten by agreement of the parties. *See* ECF No. 35 at 5 and ECF No. 42 at 3.

4

defendant asserts it's providing amended discovery responses. Accordingly, to the extent not already moot, plaintiff's motion to compel is granted as to Interrogatory Nos. 1, 4, and 11, and Document Request Nos. 4, 7–10, 16, 25, and 37.

Plaintiff also asks the court to require defendant to identify which bates-numbered documents are responsive to which requests and/or interrogatories, to identify documents withheld in a privilege log, and to provide a sworn signature page with defendant's interrogatory answers. To the extent not already moot, plaintiff's requests are granted.

### 6. Documents Withheld Based on Medical Quality Assurance Privilege

Plaintiff asks the court to compel defendant to produce documents defendant is withholding pursuant to the medical quality assurance privilege contained in 10 U.S.C. § 1102—specifically, (1) credentialing and privileging files of specific IACH physicians,[7] (2) a note written by Sean Pozarek, CRNA, and (3) a memorandum written by Mary Ellen Raymond, CNM.

10 U.S.C. § 1102(a) provides that "[m]edical quality assurance records created by or for the Department of Defense as part of a medical quality assurance program are confidential and privileged." The statute goes on to specifically provide that "*[n]o part of any medical quality assurance record … may be subject to discovery or admitted into evidence in any judicial … proceeding*"[8] except under certain enumerated exceptions,[9]

---

[7] To the extent plaintiff also seeks personnel files of specific IACH physicians and staff, plaintiff's request is moot. Defendant asserts it has produced the requested files (with certain personal information—e.g., tax and employee benefits information—omitted) pursuant to an agreement with plaintiff.

[8] 10 U.S.C. § 1102(b)(1) (emphasis added).

5

none of which apply in this case. Congress had one overriding concern in mind when it enacted this medical quality assurance privilege:

> to produce an effective mechanism allowing the military departments to monitor and ensure that quality medical care [is] provided to Department of Defense beneficiaries through a collegial review process operating in an "environment of confidentiality in order to elicit candid appraisals and evaluations of fellow professionals" without the fear that such records would be subject to discovery during litigation, thereby causing such beneficiaries to "receive less than the high quality of care they deserve."[10]

The statute defines "medical quality assurance program" as:

> any peer review activity carried out … to assess the quality of medical care, including activities conducted by individuals, military medical or dental treatment facility committees, or other review bodies responsible for quality assurance, credentials, infection control, patient care assessment …., medical records, health resources management review and identification and prevention of medical or dental incidents and risks.[11]

The term "medical quality assurance record" is defined as "the proceedings, records, minutes, and reports that emanate from quality assurance program activities described [above] and are produced or compiled by the Department of Defense as part of a medical quality assurance program."[12]

### a. Credentialing and Privileging Files

Plaintiff seeks the "credentialing and privileges files" of three IACH physicians.

---

[9] *Id.* § 1102(c).

[10] *Smith ex rel. Smith v. United States*, 193 F.R.D. 201, 208 (D. Del. 2000) (quoting 1986 U.S.C.C.A.N. 6413, 6440).

[11] 10 U.S.C. § 1102(j)(1).

[12] *Id.* § 1102(j)(2).

Opposing plaintiff's motion to compel, defendant has submitted the declaration of Reynold Mosier, Deputy Commander for Quality and Safety at IACH, which asserts that credentialing and privileging are part of the IACH medical quality management program. The declaration indicates that provider credential files are records compiled or created by IACH quality management activities, and that the files are kept separate from non-quality management records per Army Regulation 40-68.[13] Defendant cites Army Regulation 40-68 for the proposition that "credentialing and privileging are two sides of one coin," and that the privileging process is "directed solely and specifically to the provision of quality patient care."[14]

As defendant points out, this court has already considered the medical quality assurance privilege in a case involving privileging and credentialing files of a physician at IACH. In *Benson v. United States*, this court concluded:

> The application for, review of, and granting of medical privileges is a credentialing activity that occurs during a process in which the quality of medical care that a particular health care practitioner is capable of providing must be assessed, and thereby attempt to prevent medical incidents and risks. It is, quite simply, a part of the "medical quality assurance program" as defined by the plain language of the statute. Further, the documents memorializing that credentialing activity are reports that emanate from that medical quality assurance program and, therefore, are "medical quality assurance records" as defined by the plain language of the statute.[15]

---

[13] Army Regulation 40-68 establishes policies, procedures, and responsibilities for the administration of the Army Medical Department Clinical Quality Management Program.

[14] ECF No. 42 at 8.

[15] *Benson v. United States of America*, No. 01-2148 (D. Kan. Sept. 6, 2002).

Plaintiff correctly observes that *Benson* was decided prior to the 2011 amendment of 10 U.S.C. § 1102, which changed the definition of "medical quality assurance program" by replacing "any activity carried out" with "any peer review activity carried out."[16] The 2011 amendment also added the following definition of "peer review":

> any assessment of the quality of medical care carried out by a health care professional, including any such assessment of professional performance, any patient safety program root cause analysis or report, or any similar activity described in regulations prescribed by the Secretary under subsection (i).[17]

Plaintiff argues that under the amended definition of "medical quality assurance program," the credentialing and privileging files are employment records, rather than protected quality assurance documents. Relying on the 1999 case of *E.E.O.C. v. Med-National, Inc.*,[18] plaintiff claims he's entitled to "at least those portions of the privileging and credentialing files that were initiated as employment records rather than as quality assurance documents."[19] Plaintiff reasons, "[d]efendant should not be permitted to shield itself from theories of liability merely by including employment documents in quality assurance files."[20]

The court is unpersuaded—at least on this relatively thin record—that the 2011

---

[16] *See* Pub. L. No. 112-81, § 714(a), 125 Stat. 1298 (2011).

[17] 10 U.S.C. 1102(j)(4).

[18] 186 F.R.D. 609 (D. Haw. 1999).

[19] ECF No. 45 at 8.

[20] *Id.*

amendment to the medical quality assurance privilege statute has altered the status of the requested documents as "medical quality assurance records."  Further, the statute "protects the confidentiality of *all* 'medical quality assurance records,' regardless of whether the contents of such records originated within or outside of a medical quality assurance program."[21]

Plaintiff correctly asserts that defendant may not insulate non-privileged, non-confidential documents from disclosure by filtering them through a quality assurance program.  Notably, section 1102(h) provides:

> [n]othing in this section shall be construed as limiting access to the information in a record created and maintained outside a medical quality assurance program, including a patient's medical records, on the grounds that the information was presented during meetings of a review body that are part of a medical quality assurance program.[22]

But as the court observed in *Dayton Newspapers, Inc.*, "[t]his does not mean … that § 1102(h) authorizes the disclosure of a patient's medical files *from a medical quality assurance record*."[23]  Rather, "[s]ection 1102(h) … makes clear that an individual is not precluded from obtaining those files *from an outside source* (i.e., a source other than the quality assurance program) simply because they may have been incorporated into a

---

[21] *Dayton Newspapers, Inc. v. Dep't of Air Force*, 107 F.Supp.2d 912, 917 (S.D. Ohio 1999)

[22] 10 U.S.C. § 1102(h).

[23] *Dayton Newspapers, Inc.*, 107 F.Supp.2d at 917 (emphasis in original).

quality assurance record."[24] Indeed, in *Med-National, Inc.*, the case on which plaintiff relies, the E.E.O.C. sought disclosure of employment applications from an independent contractor of the government, rather than the military's actual quality assurance program.

Accordingly, to the extent plaintiff seeks credentialing and privileging files of specific IACH physicians, plaintiff's motion to compel is denied.

### a. Note and Memorandum

As indicated above, plaintiff seeks a note written by Sean Pozarek, CRNA, and a memorandum written by Mary Ellen Raymond, CNM. Plaintiff apparently became aware of these documents during the course of Mr. Pozarek's and Ms. Raymond's depositions. Mr. Pozarek testified that following the exploratory laparotomy performed on Ms. Konrad, he created a typed note "to remind [him]self of the patient."[25] Ms. Raymond testified that "[n]ot too much longer after the incident occurred," she created a typed memorandum "to make sure that the facts, as [Ms. Raymond] saw them, were given to Risk Management."[26] The content of the documents is unclear.

Plaintiff argues the documents are not protected by the quality assurance privilege because "the documents were created by the witnesses on their own volition and separate from any peer review process."[27] Defendant contends that section 1102 "does not require

---

[24] *Id.* at 917–18 (emphasis in original).

[25] ECF No. 35-8 at 1.

[26] ECF No. 35-9 at 2.

[27] ECF No. 35 at 7.

that someone who is part of a quality assurance program direct the creation of a document for the privilege to attach."[28] Defendant argues that because Raymond and Pozarek created the records "specifically for use in the quality assurance process," the documents are privileged under section 1102.[29]

Plaintiff, in his reply, argues that with its 2011 amendment to 10 U.S.C. § 1102, Congress intended to clarify that the quality assurance privilege does not apply to records stemming from *any* activity of groups or individuals associated with the medical quality assurance program. "Rather, it only protects records created as part of *any peer review activity* carried out by *individuals or bodies responsible for* medical quality assurance."[30]

The court finds the instant record insufficient to establish that the documents are protected from disclosure under 10 U.S.C. § 1102. With respect to the note written by Mr. Pozarek, it's unclear whether he provided the note to anyone and if that note was used in any capacity except to prepare Mr. Pozarek for his deposition in the instant litigation. Turning to the memorandum drafted by Ms. Raymond, it's unclear to whom she directed the memorandum and how that memorandum has been maintained by IACH. As noted above, the Mosier declaration asserts that "[r]ecords compiled or created by IACH quality management activities are kept separate from non-quality management

---

[28] ECF No. 42 at 4.

[29] *Id.* at 7.

[30] ECF No. 45 at 4 (emphasis in original).

records as per the Army's Clinical Quality Management regulation."[31]  But defendant has not indicated whether the documents sought by plaintiff are included in those records.

IT IS THEREFORE ORDERED that plaintiff's motion to compel is granted in part, denied in part, and taken under advisement in part.  Where defendant has been ordered to supplement its answers or produce documents, it must do so by **May 14, 2018**.

IT IS FURTHER ORDERED that defendant is directed to submit the Pozarek note and Raymond memorandum to the court for *in camera* review, on or before **May 14, 2018**. By the same deadline, defendant is directed to submit an affidavit clarifying how the Pozarek note and Raymond memorandum have been held by IACH, and how the documents have been moved (if at all); defendant is granted leave to submit a supplemental brief with the affidavit, limited to three double-spaced pages of argument. Plaintiff shall have five business days to file a responsive brief, likewise limited to three pages.  No further briefing will be allowed.

Dated April 30, 2018, at Kansas City, Kansas.

     s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[31] ECF No. 42-2.