IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICKY WHEELER, personally and as the
Special Administrator of the Estate of
Gretchen Konrad, deceased, and as
the father and natural guardian of
L.W., a minor,
        Plaintiff,

vs.                                                                          No. 17-2249-JTM

UNITED STATES OF AMERICA,
        Defendant.


MEMORANDUM AND ORDER

The plaintiff Ricky Wheeler has moved for leave to amend the disclosure of his expert, Dr. Kurt Krueger, as to the damages for loss of services, care, and guidance due to the death of Gretchen Konrad. In *Wentling v. Medical Anesthesia Serv.*, 237 Kan. 503, 701 P.2d 939 (1985), the Kansas Supreme Court recognized an economic claim for the loss of such services and care. Wheeler argues that a recent decision by the same court, *Burnette v. Eubanks*, 425 P.3d 343 (2018), decided after the parties disclosed their experts, potentially changes the rule established in *Wentling*, such that Dr. Krueger should be permitted to amend his report.

The defendant opposes the motion (Dkt. 94), arguing that *Burnette* simply applies established law — in fact, acknowledging *Wentling* as the "established standard," 425 P.3d

at 347—and therefore the decision does not warrant altering Dr. Krueger's report. Alternatively, the defendant argues that if Dr. Krueger is allowed to amend his report, it should be given leave to present its own expert testimony on the issue, and the opportunity to challenge any amended report by Dr. Krueger. Plaintiff argues in reply (Dkt. 96) that the court should permit the amendment, but preclude the defendant from responding by challenging an amended report or presenting its own expert to address the issue.

The court finds that *Burnette* does not fundamentally transform Kansas law regarding so-called *Wentling* damages so as to justify modification of Dr. Krueger's report. Plaintiff in fact concedes that "[i]t is unclear what impact *Burnette* may have on this case and other wrongful damages." (Dkt. 93, at 5). The court concludes *Burnette* does not have substantial impact on this case, and so does not warrant modification of the existing expert report.

*Burnette* acknowledged that "each case has nuanced circumstances," 425 P.3d at 347, and its ultimate holding that the district court had erred in submitting a claim for *Wentling* damages to the jury was closely tied to the particular circumstances of that case. In *Wentling* (as in this case), the claim for *Wentling* damages was premised on the death of a spouse and parent. In addition, the claims were accompanied by traditional economic loss claims for loss of services.

In *Burnette*, by contrast, the plaintiffs sought *Wentling* damages for the loss of their adult son. More importantly, as the court repeatedly stressed, the parents' claim

presented "no 'loss of services' claim of the type that are more typically understood as economic damage." 425 P.3d at 357. The plaintiffs' evidence for such damages were "generalized" in nature, taking the form of "evidence about Joel's close relationship and loving companionship with his parents, his attentiveness, or his caring nature." *Id*. at 361, 364.

> Reduced to its essence, plaintiffs simply asked the jury to be fair and just when considering this component of their claimed economic losses, which is the same valuation methodology used for noneconomic damages. The evidence provided nothing on which a jury could base an economic valuation—even under *Wentling*'s presumption that juries are capable of converting economic losses into their monetary equivalents on the basis of their own experience and knowledge. *Wentling*, 237 Kan. 503, Syl. ¶ 1, 701 P.2d 939.

425 P.3d at 364.

The *Burnette* court did not depart from or modify the rules in *Wentling*, but simply applied them to the nuanced facts of the case:

> The economic damages in *Wentling* were supported by evidence about actual services lost, which were understood to be of the type capable of being purchased, *e.g.*, providing in-home, rather than out-of-home, care for a disabled child; or things that would have otherwise economically benefitted plaintiffs, *e.g.*, guidance that would have contributed to the child's ability to obtain future employment. But there was no loss of services claim by Joel's parents. And the evidence presented about actual losses from Joel's death did not establish—or even reference—any economic dimension. The jury had nothing to associate the loss of care and attention claim to some reasonable basis for monetary computation or equivalence to enable it to arrive at an economic loss recovery.
>
> Given this, it becomes readily apparent this item of loss was indistinguishable from those for which the jury was permitted to award noneconomic damages under the jury instruction defining those to include

3

> "[l]oss of society, loss of comfort, or loss of companionship." And the jury gave Joel's parents all they asked for in noneconomic damages.

*Id*.

The standards for economic losses recognized in *Wentling*—that they are "capable of computation or conversion using some equivalence to a monetary basis or material standard based on the marketplace," even though they "need not be proven with mathematical precision through experts"—were not modified but reiterated by *Burnette*. 425 P.3d at 361-62 (citing *Wentling*, 237 Kan. at 508, 514-15).

The court finds that the plaintiff has failed to show good cause for amendment of the existing expert report.

IT IS ACCORDINGLY ORDERED this day of December, 2018, that the plaintiff's Motion to Amend (Dkt. 93) is hereby denied.

s/ J. Thomas Marten
J. Thomas Marten, Judge